JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
KOHN, SWIFT & GRAF, P.C. and
JOSEPH C. KOHN, ESQUIRE

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number) (215) 864-9600
James J. Rohn, Esquire, Conrad O'Brien;
1515 Market St., 16th Fl., Phila., PA 19102

## DEFENDANTS
STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, P.L.L.C., CHEVRON CORPORATION, and FRENTA DE DEFENSA DE LA AMAZONIA,

County of Residence of First Listed Defendant   New York
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known) Bruce Stephen Kaplan, Esquire
Scott A. Edelman, Esquire
Ilann M. Maazel, Esquire

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USC 2201
Brief description of cause: Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: November 12, 2010
SIGNATURE OF ATTORNEY OF RECORD: /s/ James J. Rohn

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

***UNDER SEAL***

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOHN, SWIFT & GRAF, P.C. and JOSEPH C. KOHN, ESQUIRE, <br><br> Plaintiffs <br><br> v. <br><br> STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, P.L.L.C., CHEVRON CORPORATION, and FRENTE DE DEFENSA DE LA AMAZONIA, <br><br> Defendants. | **COMPLAINT** <br><br> NO.: 10-CV-_____ <br><br> **FILED UNDER SEAL** |

Plaintiffs, Kohn, Swift & Graf, P.C. and Joseph C. Kohn, Esquire (**collectively "KSG"**) by and through their attorneys, Conrad O'Brien P.C., by way of Complaint allege:

### I.   PRELIMINARY STATEMENT

1.   This case arises out of a long-running environmental class action case against Texaco, Inc., which was originally filed in the Southern District of New York on behalf of citizens of Ecuador, alleging environmental contamination and seeking damages and equitable relief. Kohn Swift along with other lawyers represented the class. After nine years of litigation and two appeals to the Second Circuit, the defendant's *forum non conveniens* motion was granted, and the case was dismissed in favor of the Ecuadorian courts. The litigation then moved to Ecuador. In 2003, a case was filed in Lago Agrio, Ecuador by and through Ecuadorian attorneys (**"the Lago Agrio Litigation"**), seeking relief against the Chevron Corporation (which had merged with Texaco) on behalf of the Frente de Defensa de la Amazonia (**"the Frente"**), an organization formed to prosecute the litigation on behalf of the aggrieved Ecuadorians. KSG was retained as counsel to the Frente to consult on any U.S. legal issues and related matters, and

to advance costs related to the litigation. As of November 2009, KSG ceased representation of the Frente. Beginning in December 2009 and continuing to today, Chevron has instituted proceedings in the United States under 28 U.S.C. § 1782 seeking discovery in connection with its defense of the Lago Agrio Litigation, other related litigation in Ecuador, and an international arbitration related to the subject matter of the Lago Agrio Litigation. The primary purpose of Chevron's §1782 actions has been to gather evidence of alleged fraud occurring with respect to the Lago Agrio Litigation.

2.  Chevron has recently notified KSG that it intends to serve subpoenas pursuant to § 1782 to seek documents and deposition testimony. KSG is willing to accept service of the proposed subpoenas and comply with them, subject only to any claims of privilege or other duties of non-disclosure that might attach to the documents or testimony.

3.  These circumstances leave KSG in the untenable position of being forced to choose between two opposite and equally difficult choices. <u>One</u>, KSG could choose to disclose potentially work-product and/or attorney-client protected information of a former client to a third party who has threatened to force the disclosure of such information through a federal subpoena. This same party has suggested in other § 1782 matters that KSG was complicit in the alleged fraud of the former client and/or of other counsel representing the former client, an allegation that KSG denies. This first choice would potentially expose KSG to civil actions for malpractice by their former client and/or other agents of the client, other actions by third parties, and/or disciplinary actions. Alternatively, <u>two</u>, KSG could withhold the material and risk continued irreparable harm to its reputation, and be unable to fully defend its reputation against allegations of participation in improper conduct. With either choice, KSG faces significant adverse consequences.

***UNDER SEAL***

4. KSG therefore brings this civil action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking declaratory judgment as to whether the former client and/or other counsel waived protection of the work-product doctrine and/or the attorney client privilege. KSG also seeks declaratory judgment as to whether it may disclose work-product and/or attorney-client or otherwise protected materials to a third party without breaching any fiduciary or other duty under, *inter alia*, Pennsylvania Rule of Professional Conduct 1.6(a), which governs a lawyer's duty of confidentiality. Importantly the Rule also states that "[a] lawyer may reveal such information … to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used; or … to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client[.]" See RPC 1.6(c)(3) & (4).[1]

5. KSG takes no position as to whether the documents that have been requested would substantiate any crime or fraud, but expressly denies any crime or fraud on its part.

---

[1] The comments to Rule 1.6 state:

> [W]here a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. Such a charge can arise in a civil, criminal, disciplinary or other proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (c)(4) **does not require the lawyer to await the commencement of an action or proceeding** that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend also applies, of course, where a proceeding has been commenced.

RPC 1.6 cmt. 14 (emphasis added).

6.Pending the Court's intervention and ruling, KSG will continue collecting and preserving potentially responsive documents, and has already begun preparation of a privilege log.

## II.JURISDICTION AND VENUE

7.This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 since the work-product doctrine and the attorney-client privilege arise under federal law by operation of 28 U.S.C. § 1782(a), Fed. R. Civ. P. 26(b)(3), and federal common law.

8.This Court has supplemental jurisdiction over any related state law questions pursuant to 28 U.S.C. § 1367.

9.Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) since the work product and attorney-client protected materials at issue are situated here.

## III.PARTIES

10.Plaintiff Kohn, Swift & Graf, P.C., is a Pennsylvania professional corporation doing business at One South Broad Street, Suite 2100, Philadelphia, PA 19107.

11.Plaintiff Joseph C. Kohn, Esquire, is a citizen of Pennsylvania, a licensed Pennsylvania attorney in good standing, and a shareholder in Kohn, Swift & Graf.

12.Defendant Steven R. Donziger, Esquire, upon information and belief, is a citizen of New York and a licensed New York attorney.

13.Defendant Donziger & Associates, P.L.L.C., upon information and belief, is a New York professional service limited liability company doing business at 245 W. 104th Street, New York, New York 10025.

14. Defendant Chevron Corporation is a Delaware corporation doing business at 6001 Bollinger Canyon Road, San Ramon, CA 94583.

15. Defendant Frente de Defensa de la Amazonia (translation: "Amazonian Region Defense Front") is an organization formed under the laws of Ecuador, which represents the interests of the Ecuadorians affected by the oil exploration activities, and is the party on whose behalf relief is sought in the Lago Agrio Litigation. Frente is KSG's former client.

## IV. FACTS

### A. The Lago Agrio Litigation

16. In 1993, KSG was contacted by an attorney named Cristobal Bonifaz concerning the potential of filing a class action lawsuit against Texaco on behalf of indigenous Ecuadorians adversely affected by Texaco's oil exploration activities in Ecuador.

17. In November 1993, KSG and the Law Offices of Cristobal Bonifaz filed a class action lawsuit in the Southern District of New York, captioned <u>Aguinda et al. v. Texaco, Inc.</u>, No. 93-cv-7527 ("**the Aguinda Action**").

18. During the course of the Aguinda Action, Bonifaz's firm included at various times his son John Bonifaz, and attorney Steven Donziger, a former law school classmate of John Bonifaz.

19. During the course of and unrelated to the Aguinda Action, Texaco entered into a settlement with the Republic of Ecuador and a state-owned oil company in 1995, agreeing to engage in environmental remediation in exchange for a release of certain claims after the remediation phase. Those parties entered into a release in 1998.

20. The Aguinda Action was actively litigated and resulted in several reported decisions, including two by the Second Circuit on *forum non conveniens* and other issues.

21. At all times KSG litigated the Aguinda Action in an appropriate and ethical manner.

22. After the dismissal of the Aguinda Action, a case was commenced in 2003 in Ecuador by Ecuadorian lawyers—the Lago Agrio Litigation—against Chevron, with whom Texaco had merged.

23. Although KSG continued to represent the Ecuadorean Plaintiffs, they were not counsel of record in the Lago Agrio Litigation.

24. After litigation began in Ecuador, Bonifaz's involvement decreased and Donziger essentially took control of decision-making with the Frente, and controlled the flow of information about the litigation to KSG. In or about 2006, Bonifaz ceased being counsel to the Frente, and Donziger became the sole liaison between the case in Ecuador and KSG.

25. The recent discovery taken by Chevron pursuant to 28 U.S.C. § 1782 in the time period after KSG withdrew as counsel, as described in more detail below, has revealed to KSG numerous actions taken in the case in Ecuador by others, actions of which KSG was not previously informed or aware.

26. KSG's primary role in the litigation from 1993 forward was to provide advice on U.S. related legal issues and to advance costs related to the litigation. KSG also participated in a mediation with Chevron's counsel, which was held in the United States in 2007 and 2008.

27. KSG withdrew as counsel in November 2009, prior to the initiation of any of the § 1782 actions and discovery. KSG has had no role or involvement in the Lago Agrio Litigation since that time.

### B. Alleged Misconduct in the Lago Agrio Litigation

28. Beginning in December 2009 and continuing into 2010, Chevron initiated discovery in the U.S. pursuant to 28 U.S.C. § 1782, seeking information to defend itself in the Lago Agrio Litigation.

29. There have been allegations in the Lago Agrio Litigation of misconduct by Donziger, the Ecuadorian attorneys, and the Frente, which surfaced in connection with certain technical expert reports submitted to the Ecuadorian courts on behalf of the Ecuadorian plaintiffs and purportedly authored by Dr. Charles W. Calmbacher, and in connection with another expert report, purportedly authored by Richard Stalin Cabrera Vega.

#### 1. The Calmbacher Reports

30. Dr. Calmbacher submitted at least two reports to the Lago Agrio court regarding his conclusions as to levels of environmental contamination and costs of remediation (**"the Calmbacher Reports"**).

31. However, in a March 2010 deposition taken by Chevron pursuant to one of its § 1782 actions, Dr. Calmbacher testified that although the reports bore his signatures, he did not reach the conclusions stated therein. See **Exhibit A** at 116:9-10.

32. He further testified that two letters were submitted to the court bearing his signature that he did not author. See **Exhibit A** at 135:2-7; 137:11-15.

#### 2. The Cabrera Reports

33. The purported impropriety in the Lago Agrio Litigation was not limited to the Calmbacher Reports.

34. For example, as part of the litigation process, the Lago Agrio court appointed a neutral expert, Richard Stalin Cabrera Vega (**"Cabrera"**), to assist it in evaluating the evidence.

35. Cabrera's expert role was, in effect, to act as an independent adjunct to the court in the litigation process and to take or receive evidence to recommend to the court what, if any, measure of damages should be assessed if the court were to make a finding of liability.

36. Pursuant to his role, Cabrera submitted two reports to the Ecuadorian court in 2008 ("**the Cabrera Reports**"), concluding that $27.4 billion should be assessed in damages against Chevron.

37. Chevron later alleged that the reports were not the impartial work of Cabrera, but were in fact the product of fraudulent collusion between Cabrera, experts for the Frente, and Ecuadorian and U.S. counsel for the Frente.

38. Chevron has pointed to meetings between Donziger, Ecuadorian counsel, and other consultants as proof of improper influence on Cabrera. KSG was not informed of and had no knowledge of those meetings.

### 3. *Crude*

39. Some of the alleged impropriety in the Lago Agrio Litigation was captured on film during the production of *Crude: The True Price of Oil*, a feature-length documentary about the Lago Agrio Litigation. See **Exhibit B** ("About" page for *Crude*).

40. Steven Donziger solicited the filming of *Crude* and permitted cameras to follow him as he engaged in various activities associated with the pursuit of the Lago Agrio Litigation. In fact, the basis for much of Chevron's invocation of the crime-fraud exception in its recent §1782 actions are selected outtakes from the movie *Crude*, the vast majority of which focus on attorney Steven Donziger.

### C. Collateral Proceedings

#### 1. Criminal Proceedings

41. In yet another facet of the Lago Agrio Litigation, criminal proceedings have also arisen in Ecuador related to the earlier Texaco settlement and release.

42. Sometime after the Lago Agrio Litigation began, the Ecuadorian government filed a criminal complaint against, *inter alia*, Ricardo Reis Veiga and Rodrigo Perez Pallares, attorneys for Texaco.

43. The Ecuadorian government accuses Veiga and Pallares of falsifying and misrepresenting remediation efforts in connection with the settlement agreement and release.

44. Veiga and Pallares, for their part, assert their innocence and assert that the criminal proceedings were brought for the purpose of undermining the validity of the settlement and release and to pressure Chevron to settle the Lago Agrio Litigation.

#### 2. Bilateral Investment Treaty Arbitration

45. Chevron commenced an arbitration in 2009 in the Hague Permanent Court of Arbitration against the Republic of Ecuador pursuant to a bilateral investment treaty (**"the BIT Arbitration"**) between the United States and Ecuador, under the rules and procedures of the United Nations Commission on International Trade Law.

46. In the BIT Arbitration, Chevron asserts, *inter alia*, that the Republic of Ecuador has denied it justice under international law by interfering with the Lago Agrio Litigation.

**D.     28 U.S.C. § 1782(a)**

47.     Beginning in December 2009 and continuing into 2010, Chevron has commenced U.S. litigation pursuant to 28 U.S.C. § 1782(a) in twelve different federal jurisdictions regarding the Lago Agrio Litigation.[2]

48.     Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. …. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

49.     Section 1782(a) also states that a person may not be compelled to give testimony or produce a document "in violation of any legally applicable privilege."

50.     Privileges in § 1782 matters are governed by federal law.

---

[2] The chart below, upon information and belief, is a complete listing of the matters in which Chevron or its attorneys Veiga and Pallares have served § 1782(a) subpoenas:

| JURISDICTION: | DOCKET NUMBER(S): |
|---|---|
| District of Colorado | 10-cv-47 |
| District of the District of Columbia | 10-mc-370; 10-mc-371 |
| District of New Jersey | 10-cv-2675 |
| District of New Mexico | 10-mc-21, 10-mc-22 |
| Middle District of Tennessee | 10-cv-686 |
| Northern District of Georgia | 10-mi-76 |
| Southern District of California | 10-cv-1146 |
| Southern District of New York | M-19-00111; 10-mc-1; 10-mc-2 |
| Southern District of Texas | 10-mc-134 |
| Western District of North Carolina | 10-mc-27 |

The above subpoenas have also generated a number of appeals.

### E.     Chevron's § 1782(a) Subpoenas

51.    Because evidence relevant to the foreign and international proceedings is located in the United States, Chevron as well as attorneys Veiga and Pallares have served subpoenas across the United States pursuant to § 1782(a).

52.    Chevron's subpoena efforts have included Steven Donziger, whose motion to quash was recently denied in the Southern District of New York.

53.    Through their § 1782(a) subpoenas, Chevron and attorneys Veiga and Pallares have sought depositions and documents to support their allegations that fraud occurred in the Lago Agrio Litigation during the preparation of the Cabrera and Calmbacher Reports.

54.    More specifically, Chevron, Veiga, and Pallares have sought evidence to support their claim that the Cabrera Reports were in fact "ghostwritten" by the Frente's consulting experts in the United States and that the Calmbacher Reports were changed without his authorization.

55.    Since Chevron and its attorneys have sought evidence that might otherwise be protected by the attorney-client privilege and/or the work product doctrine, the issue of privilege and/or its waiver has been extensively litigated.

56.    In the course of these many proceedings, four courts have found that the attorney-client privilege and work-product doctrine were waived because of the crime-fraud exception. In re Chevron Corp., No. 10-mc-21, Document No. 173, at 12 (D.N.M. Sept. 13, 2010) (magistrate opinion and order) (attached as **Exhibit C**), aff'd, No. 10-mc-21, Document No. 194, at 4 (D.N.M. Sept. 28, 2010) (district court opinion and order) (attached as **Exhibit D**); Chevron Corp. v. E-Tech Int'l, No. 10-cv-1146, 2010 WL 3584520, at *6 (S.D. Cal. Sept. 10, 2010) (attached as **Exhibit E**); Chevron Corp. v. Camp, Nos. 10-mc-27, 10-mc-28, 2010 WL 3418394,

at \*6 (W.D.N.C. Aug. 30, 2010) (attached as **Exhibit F**); In re Application of Chevron Corp., No. 10-cv-2675, Document No. 21, at 2 (D.N.J. June 15, 2010) (Order of the Court incorporating oral opinion of June 11, 2010) (attached as **Exhibit G**), appeal docketed, No. 10-2815 (3d Cir. June 18, 2010); see also No. 10-cv-2675, Document No. 33, at 44:11-16 (June 11, 2010 oral opinion) (attached as **Exhibit H**).

57. Other courts have discussed the possibility of a crime-fraud waiver, but have declined to reach the issue because they found that privileges were otherwise waived on other grounds, including, for example, by disclosure to third parties. See In re Application of Chevron Corp., ---F. Supp. 2d----, 2010 WL 4118093, at \*4 (S.D.N.Y. Oct. 20, 2010) (attached as **Exhibit I**) (holding privilege claims waived by failure to produce privilege log), appeal docketed, No. 10-4341 (2d Cir. Oct. 26, 2010); Chevron Corp. v. Stratus Consulting, Inc., No. 10-cv-47, 2010 WL 3923092, at \*11 (D. Colo. Oct. 1, 2010) (attached as **Exhibit J**) (holding work product privilege waived by consultant's disclosure to Cabrera); see also Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir 2010) (discussing potential fraud and holding work product privilege waived by consultant's disclosure to Cabrera) (attached as **Exhibit K**). But see Chevron Corp. v. Quarles, No. 10-cv-686, Document No. 108, at 5-6 (M.D. Tenn. Sept. 21, 2010) (finding no evidence that crime-fraud exception applies) (attached as **Exhibit L**).

### F. Mounting Public Allegations of Fraud & Resultant Harm to KSG's Reputation

58. The public record and media reports are replete with allegations of wrong-doing by the Frente and/or their representatives. See, e.g., **Exhibit M** (9/13/10 CNNMoney.com article entitled "Evidence of Fraud Mounts in Ecuadorian Suit Against Chevron"); **Exhibit N** (11/3/10 CorporateCounsel.com article entitled "The Global Lawyer: Ecuador Plaintiffs Survive

Chevron"); **Exhibit O** (8/23/10 San Francisco Recorder article entitled "Chevron Case Marked by 'Crude' Lawyering"); **Exhibit P** (8/9/10 Washington Times article entitled "Drilling Chevron in Ecuador: U.S. Oil Giant Victimized by Polluted Lawsuit").

59. In fact, the Honorable Lewis A. Kaplan of the Southern District of New York recently reviewed publicly available evidence and concluded that "there is evidence to support Chevron's claim that the [Cabrera Reports are] a fraud orchestrated by the Lago Agrio plaintiffs." See In re Application of Chevron Corp., No. 10-mc-2, Document No. 97, at 3 (S.D.N.Y. Nov. 5, 2010) (attached as **Exhibit Q**), appeal docketed, No. 10-4341 (2d Cir. Oct. 26, 2010).[3]

60. These on-going and widespread fraud allegations have caused and continue to cause harm to KSG's reputation. Public reports have failed to distinguish between the various Ecuadorian-based actors and Donziger on the one hand, and those like KSG on the other, who are U.S.-based and who had no knowledge of the alleged conduct.

61. For example, a recent article from the SanFranciscoSentinel.com stated: "But this dream has turned into a nightmare and legal quagmire for the environmental activists, their attorneys and the deep-pocket backers of their lawsuit against Chevron. In fact, it's worse than that: **the movie has threatened the credibility of the case as well as the reputations of ... [the] law firm KSG and Graf.** And, the damage being done to these individuals and organizations is just starting to be seen." See **Exhibit R** (emphasis added); accord **Exhibit S**; **Exhibit T**.

62. KSG do not wish to disclose any protected material in violation of any privilege or fiduciary or other duty (including any duty arising under Pennsylvania Rule of Professional

---

[3] Judge Kaplan had previously issued an abridged memorandum opinion and order in the Chevron matter, which promised a forthcoming full opinion. See In re Application of Chevron Corp., 2010 WL 4118093, at *1. The November 5 opinion is that full opinion.

Conduct 1.6), but Plaintiffs have a strong interest in ending the continuing harm to their reputations..

### G.  Chevron's Subpoena Letter

63.  In its ongoing effort to obtain evidence in support of its positions in the Lago Agrio Litigation and the BIT Arbitration, Chevron sent a letter and two proposed subpoenas to KSG's counsel dated November 8, 2010, wherein Chevron states that it intends to file a § 1782 application seeking issuance of the two subpoenas (one for Plaintiff Kohn, Swift & Graf, one for Plaintiff Joseph C. Kohn) in one week, presumably by November 15, 2010. See **Exhibit U** (letter); **Exhibit V** (proposed subpoenas).

64.  In the letter, Chevron requests KSG to "gather all documents responsive to these subpoenas immediately, so that they will be ready for production if the court orders them produced." Chevron further urges KSG to prepare a privilege log for documents that will be withheld on the basis of "the attorney client privilege, the work product doctrine, or any other privileges or protections that Mr. Kohn and his firm invoke." See id.

65.  Chevron also writes, "[i]n making your privilege determinations, you may find relevant the November 5, 2010 order by Judge Kaplan in the Southern District of New York denying Steven Donziger's motion to quash Chevron's subpoena." See id.

### H.  KSG's Dilemma

66.  Since the commencement of the Aguinda Action in 1993, KSG either created or received work product materials and engaged in privileged communications.

67.  Those materials and communications are precisely what Chevron requests and threatens to compel via a § 1782(a) subpoena.

14

68. Thus, Chevron's letter and proposed subpoenas create a clear dilemma for KSG. It would appear that various privileges may protect the materials sought and prevent KSG's disclosure. It would also appear that KSG's former client is owed a duty of confidentiality under the applicable ethics rules. But Chevron's letter, as well as the decisions of at least six other courts, clearly suggests that an argument could be made that whatever privileges may have attached to the requested materials and deposition testimony have been waived. Based on this record, it would seem then that under Fed. R. Civ. P. 26(b)(3), federal common law, and federal waiver doctrines, as well as under Pennsylvania Rule of Professional Conduct 1.6 (c)(3) & (4), KSG may be permitted to disclose the requested materials and to give deposition testimony without running afoul of any applicable duty not to disclose.

69. But without judicial intervention, KSG will be forced to choose whether to disclose the requested materials or risk continued irreparable harm to reputation, and the risk of being unable to fully defend its reputation against allegations of participation in improper conduct.

70. Therefore, declaratory judgment is warranted.

### COUNT I – Declaratory Judgment Act: Work-Product Doctrine & Waiver

71. KSG incorporates the above allegations as if set forth fully herein.

72. This is an action seeking declaratory judgment under 28 U.S.C. § 2201.

73. There is an actual and present controversy between KSG and Defendants in this jurisdiction regarding whether the work product materials, attorney-client or otherwise privileged communications continue to be protected under Fed. R. Civ. P 26(b)(3) and federal common law, given the potential application of waiver exceptions.

74. The parties have adverse interests in the work product materials and the privileged communications: KSG has already suffered harm from the inferences that have been drawn from what is already public, and the probability of future harm is real, substantial, and immediate, including, but not limited to, continued harm to reputation.

75. A judicial determination of the parties' respective legal rights will be conclusive as to the controversy between them since this dispute is predominantly a question of law.

76. A judgment will be practical and of utility to the parties as each will know its respective rights and obligations.

77. This controversy requires an interpretation of a right arising under federal law by operation of 28 U.S.C. § 1782(a), Fed. R. Civ. P. 26(b)(3), and federal common law.

78. There is a prompt need for a declaration as to whether the work-product doctrine, the attorney-client privilege, and/or any other applicable privilege have been waived.

## COUNT II – Declaratory Judgment Act:
## Disclosure & Duties

79. KSG incorporates the above allegations as if set forth fully herein.

80. This is an action seeking declaratory judgment under 28 U.S.C. § 2201.

81. There is an actual and present controversy between KSG and Defendants in this jurisdiction regarding whether KSG may disclose the work product materials and/or privileged communications without breaching any fiduciary or other duty.

82. The parties have adverse interests in the work product materials and the privileged communications: KSG has already suffered harm from the inferences that have been drawn from what is already public, and the probability of future harm is real, substantial, and immediate, including, but not limited to, continued harm to reputation.

83. A judicial determination of the parties' respective legal rights, specifically KSG's right to disclose the materials and communications, will be conclusive as to the controversy between them since this dispute is predominately a question of law.

84. A judgment will be practical and of utility to the parties as each will know its respective rights and obligations.

85. There is a prompt need for a declaration as to whether KSG may disclose work-product, attorney-client, or otherwise privileged materials to Chevron without breaching any fiduciary or other duty.

***UNDER SEAL***

## PRAYER FOR RELIEF

WHEREFORE, KSG respectfully requests that the Court grant relief as follows:

1. Permit *in camera* inspection by the Court of KSG's work product and/or privileged materials; and

2. Declare to what extent, if any, work product materials and/or otherwise privileged materials may be disclosed in response to the proposed subpoenas; and

3. Declare to what extent, if any, KSG may disclose the work product materials and/or otherwise privileged communications in response to the proposed subpoenas without breaching a fiduciary or other duty; and

4. Grant such other relief as the Court deems appropriate under 28 U.S.C. § 2202.

          **CONRAD O'BRIEN P.C.**

By: _____/s/ James J. Rohn_____
     James J. Rohn
     Patricia M. Hamill
     Matthew H. Haverstick
     CONRAD O'BRIEN P.C.
     1515 Market Street, 16th Floor
     Philadelphia, Pennsylvania 19102
     (215) 864-9600

     *Attorneys for Plaintiffs*

Dated: November 12, 2010

***UNDER SEAL***

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | 3/29/10 Deposition of Dr. Charles W. Calmbacher |
| B | "About" page for *Crude: The Real Price of Oil* |
| C | In re Chevron Corp., No. 10-mc-21, Document No. 173 (D.N.M. Sept. 13, 2010) |
| D | In re Chevron Corp., No. 10-mc-21, Document No. 194 (D.N.M. Sept. 28, 2010) |
| E | Chevron Corp. v. E-Tech Int'l, No. 10-cv-1146, 2010 WL 3584520 (S.D. Cal. Sept. 10, 2010) |
| F | Chevron Corp. v. Camp., Nos. 10-mc-27, 10-mc-28, 2010 WL 3418394 (W.D.N.C. Aug. 30, 2010) |
| G | In re Application of Chevron Corp., No. 10-cv-2675, Document No. 21 (D.N.J. June 15, 2010) |
| H | In re Application of Chevron Corp., No. 10-cv-2675, Document No. 33 (D.N.J. June 23, 2010) |
| I | In re Application of Chevron Corp., ---F. Supp. 2d----, 2010 WL 4118093 (S.D.N.Y. Oct. 20, 2010) |
| J | Chevron Corp. v. Stratus Consulting, Inc., No. 10-cv-47, 2010 WL 392092 (D. Colo. Oct. 1, 2010) |
| K | Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir 2010) |
| L | Chevron Corp. v. Quarles, No. 10-cv-686, Document No. 108 (M.D. Tenn. Sept. 21, 2010) |
| M | 9/13/10 CNNMoney.com article entitled "Evidence of Fraud Mounts in Ecuadorian Suit Against Chevron" |
| N | 11/3/10 CorporateCounsel.com article entitled "The Global Layer: Ecuador Plaintiffs Survive Chevron" |
| O | 8/23/10 San Francisco Recorder article entitled "Chevron Case Marked by 'Crude' Lawyering" |
| P | 8/9/10 Washington Times article entitled "Drilling Chevron in Ecuador: U.S. Oil Giant Victimized by Polluted Lawsuit" |
| Q | In re Application of Chevron Corp., No. 10-mc-2, Document No. 97 (S.D.N.Y. Nov. 5, 2010) |
| R | 11/2/10 SanFranciscoSentinel.com article entitled "Chevron Ecuador: Pressure Mounts, Credibility Wanes for Amazon Watch, Lawyer Steven Donziger, 'Crude Film' Director Joe Berlinger in Chevron Lawsuit" |
| S | 9/24/10 Wall Street Journal article entitled "Shakedown in the Rain Forest" |
| T | 10/21/10 SanFranciscoSentinel.com article entitled "Chevron Ecuador: What Happens Now that Lawsuit is Exposed as a Fraud?" |
| U | 11/8/10 letter from Chevron re: forthcoming § 1782 application |
| V | Chevron's Proposed Subpoenas |