*** UNDER SEAL ***

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KOHN, SWIFT & GRAF, P.C. and JOSEPH C. KOHN, ESQUIRE,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN R. DONZIGER, et al,<br><br>Defendants. | CASE NO. 10-CV-6403 |

## DEFENDANT CHEVRON CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO SEAL THE COMPLAINT AND EXHIBITS ATTACHED THERETO

### I.    INTRODUCTION*

In order to preserve their naked assertion that their reputations will be further sullied if everything in this matter – the vast bulk of which is already in the public domain—is not sealed, Plaintiffs Kohn, Swift & Graf, P.C. and Joseph C. Kohn (collectively, "KSG") seek to deny public access to **any** of the records of this case, asking this Court to take the extraordinary step of sealing the entire record, including the Complaint.  Yet KSG does not even come close to satisfying the extremely high standard required by the Third Circuit for denying public access to court records.  A party seeking to overcome the public right of access to court records must make a specific showing of injury that would result from the disclosure of specific materials: "In order to override the common law right of access, the party seeking the closure of a hearing or

---

\*      By filing this opposition to plaintiffs' Motion to Seal, defendant Chevron Corporation does not waive any of its defenses to the Complaint, and it specifically reserves all defenses, including, but not limited to, lack of federal subject matter jurisdiction.

the sealing of part of the judicial record 'bears the burden of showing that … disclosure will work a clearly defined and serious injury to the party seeking closure.'" *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)). But here, as KSG concedes, "the present Complaint **does not per se reveal protected material or communications**." Motion to Seal ("Mot.") at 3 (emphasis added). KSG also fails to identify **any** specific harm that would flow from disclosure of the publicly available information in the Complaint.

KSG asserts that it has been subject to "ongoing reputational injury" because of the public scrutiny discussed in the Complaint. Compl., ¶ 60. A claim of ongoing reputational injury due to public scrutiny does not support sealing the record. In fact, KSG apparently has brought this action precisely because the subject matter is *already* in the public record and KSG supposedly wants to disclose additional information to "defend its reputation against allegations of participation in improper conduct." Compl., ¶ 69. If anything, the intense scrutiny to date provides yet another reason why this case should **not** be sealed. As the Second Circuit has held, "the mere fact that the suit has been the subject of intense media coverage is not, however, sufficient to justify closure. To hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability." *ABC, Inc., et al. v. Martha Stewart, et al.*, 360 F.3d 90, 102 (2nd Cir. 2004).

The subject matter of the Complaint relates to a long-running and high profile campaign against defendant Chevron Corporation ("Chevron") that has been a matter of intense public scrutiny for years. The people behind the litigation pending against Chevron in Lago Agrio, Ecuador—including KSG—have sought for years to bring the world's attention to the Lago Agrio Litigation through press releases, web sites, demonstrations, and meetings with state and

2

federal officials, including Congressional testimony. They recruited a documentary filmmaker to produce a feature film about the controversy, titled *Crude: The Real Price of Oil*. Plaintiff Joseph Kohn appears at length in the film. Chevron obtained the outtakes from *Crude* after a significant public debate concerning the journalists' privilege, in which thirteen major news and entertainment organizations provided their views through an amicus brief authored by noted First Amendment attorney Floyd Abrams. Ultimately, however, the Southern District of New York and the Second Circuit found that no attorney-client or journalist privilege prohibited disclosure and ordered the outtakes released. *Chevron Corp. v. Berlinger*, Nos. 10-1918-cv, 10-1966-cv (2d Cir. filed July 15, 2010). As the Southern District of New York explained, the footage from *Crude* "contains substantial evidence of misconduct in and relating to the Ecuadorian litigation." Memorandum Opinion, *In re Applic. Of Chevron Corp.*, No. 10-MC-00001, 2010 U.S. Dist. LEXIS 92677 at *3 (LAK) (S.D.N.Y. Sept. 7, 2010). The District of New Mexico observed that "[t]he release of many hours of the outtakes has sent shockwaves through the nation's legal communities, primarily because the footage shows, with unflattering frankness, inappropriate, unethical, and perhaps illegal conduct." Compl., Ex. D.

The Lago Agrio Litigation has also been the subject of numerous news stories and editorials in publications such as the *Wall Street Journal*, the *New York Times*, and *Fortune*. *The American Lawyer* maintains a "film archive" of released outtakes from *Crude*, and the *Wall Street Journal*'s lengthy editorial on the scandal, "Shakedown in the Rain Forest," prompted a response from the Republic of Ecuador's Ambassador to the United States. In short, the subject matter of this case is already a matter of intense public scrutiny.

The right of public access to the courts is a fundamental element of a free and open society. "'People in an open society do not demand infallibility from their institutions, but it is

difficult for them to accept what they are prohibited from observing.'" *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 (1986) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (plurality)). Thus, the right of public access "plays a particularly significant role in the functioning of the judicial process and the government as a whole[,] . . . enhanc[ing] the quality and safeguard[ing] the integrity of the factfinding process," fostering an "appearance of fairness," "heightening public respect for the judicial process," and serving "as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S.596, 606 (1982) (footnotes omitted). Likewise, the Third Circuit has held that there is a "pervasive common law right to inspect and copy public records and documents, including judicial records and documents." *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993). The "common law right to public access is a recognized and venerated principle." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

There is no justification in law, fairness or common sense for this Court to hide KSG's Complaint and this action from public view.

## II. THERE IS NO BASIS TO SEAL THIS ACTION

### A. KSG Has Not Identified Any Specific Protected Material in the Complaint or the Exhibits to the Complaint

At bottom, KSG seeks an order permitting the filing of the Complaint under seal not to protect any specific piece of information in the Complaint itself, but in order to hide from public view the very fact that a complaint has been filed. Plaintiffs cite no authority permitting such a radical incursion into the "pervasive common law right" of public access. *Leucadia*, 998 F.2d at 161. The standard to seal any court document (let alone hide an entire case) is extremely high: "In order to override the common law right of access, the party seeking the closure of a hearing

or the sealing of part of the judicial record 'bears the burden of showing that ... disclosure will

work a clearly defined and serious injury to the party seeking closure.'" *In re Cendant Corp.*,

260 F.3d at 194 (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).  Motions to

seal are not only disfavored, but, in the limited circumstances in which they are granted, they

must be narrowly tailored.  *See, e.g., Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d 216, 219

(E.D. Pa. 2000) (sealing only very narrow sections of a complaint actually subject to the

attorney-client privilege in an action brought by a former in-house attorney against his former

employer).  KSG's blunderbuss request to seal the entire Complaint and all exhibits, without

identifying any specific protected information, is fundamentally improper.

     Indeed, KSG concedes that "**the present Complaint does not per se reveal protected**

**material or communications**[.]" Mot. at 3 (emphasis added).  This is an understatement.  In

fact, the Complaint relies almost entirely on public court filings and media coverage, and briefly

describes a series of legal actions that have unfolded under heavy public and media scrutiny.

The accompanying exhibits are public court filings and orders (bearing the electronic filing

legend across the top of the page, or printed directly from the public Westlaw database), media

articles published and available on the Internet (bearing the internet web site URL across the

bottom of each page) and a letter and proposed subpoena from Chevron, bearing no

confidentiality legend and stating on its face that Chevron intends to attach the subpoena to a

court filing of its own.  These materials are and should continue to be in the public record, and

KSG provides absolutely no reason to seal them from public view here.

     The first six paragraphs of the Complaint simply describe KSG's declaratory relief claim

and explain that declaratory relief sought concerning the scope of privilege in connection with

Chevron's request that KSG produce documents.  *See* Compl., ¶¶ 1-6.  Paragraphs 7 through 27

briefly describe the Lago Agrio Litigation and provide basic public information about the parties

to the instant action. Nearly all of this information can be found in any number of court orders,

several of which are attached to the Complaint as Exhibits C through L and Q. Paragraphs 28

through 55 describe public court filings made in related discovery proceedings in federal district

courts, and relate some of the allegations made in those proceedings. Paragraphs 56 through 61

discuss some of the public orders that federal courts issued in those proceedings, as well as

related media coverage. Paragraphs 62 through 85 relate to Chevron's stated intention to seek

discovery from KSG. In short, KSG identifies no specific protected information in the

Complaint because there is none.

KSG also attached 22 exhibits to the Complaint, none of which is even arguably

confidential, let alone subject to protection from public filing. Indeed, 20 of the exhibits are

taken directly from public sources, and still bear the court filing stamps or the internet web page

information showing their public sources. Specifically, Exhibits A, C-L, and Q are court filings

and orders, and bear either electronic filing legends or are printed from the Westlaw legal

research system. Exhibits B, M-P, and R-T are articles taken from media sources, and bear

URLs at the bottom of each page showing their location on the Internet. Only Exhibit U, the

November 8, 2010 letter from Chevron, and Exhibit V, the proposed subpoena enclosed with that

letter, are not previously public documents. Neither document is confidential, let alone the type

of information that could warrant being sealed from public view.

**B.     KSG's General Allegations of Reputational Harm Do Not Satisfy the
Stringent Requirements for Sealing Court Records**

KSG's Motion to Seal not only fails to identify any specific material deserving of

protection, but also fails to identify any specific injury to be prevented. Instead, KSG's Motion

to Seal consists of precisely the vague claims of harm that the Third Circuit forbids: "Broad

allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *In re Cendant Corp.*, 260 F.3d at 194.

KSG raises three arguments to support sealing:  (1) "irremediable harm to KSG's reputation" (Mot. at 4); (2) unspecified injury that would result because the "Complaint and its Exhibits touch upon, without revealing, sensitive work product and attorney-client protected materials" (Mot. at 3); and (3) public scrutiny.  (Mot. at 3).  None of these arguments comes close to supporting sealing the Complaint or any portion thereof and denying the public's right to access.

First, general assertions of reputational harm, even when made by attorneys who consider their reputation important to professional success, are categorically insufficient to meet the stringent standard for sealing court records. *See, e.g., Solis v. Koresko*, CV-09-988, 2009 WL 91131, at *2 (E.D. Pa. March 31, 2009) (Jones, J.).  When presented with arguments similar to KSG's generalized allegations of reputational harm, Judge Jones of this Court rejected a motion to seal the pleadings, reasoning:

> The Koresko Defendants argue that the professional reputations of Attorneys Koresko and Bonney, who are licensed to practice in Pennsylvania and who are admitted to the bar of this federal judicial district, are their most valuable commodities as lawyers. They claim that Plaintiff's allegations of improper behavior impugn those reputations. However, nowhere do the Koresko Defendants specify the actual harm to which they claim the instant litigation will subject them. The Koresko Defendants' arguments in support of sealing the record are vague and speculative, and they simply provide generalized allegations of injury to reputation. These arguments are insufficient to justify the sealing of judicial records

*Solis*, 2009 WL 91131, at *2; *see also, e.g., Rose v. Rothrock*, 2009 U.S. Dist. LEXIS 37032 at *20-*27 (E.D.Pa. Apr. 30, 2009) (Pratter, J.) (denying motion to seal complaint despite defendants' assertion that complaint constituted a "hateful attack" and "would work a serious injury to their personal and professional reputations"); *Rossi v. Schlarbaum*, 2008 U.S. Dist. LEXIS 5812 at *3 (E.D.Pa. Jan. 25, 2008) (DuBois J.) (denying motion to seal complaint despite

claims by defendants that unsealing would cause "embarrassment" and "damage their reputation").

Indeed, unlike *Solis*, *Rose* and *Rossi*, the issue here is not that someone else filed a complaint against KSG making accusations that KSG fears would harm its reputation; instead, KSG elected to bring the Complaint and has chosen to include material of its own choosing. Nothing in KSG's motion or Complaint identifies any specific injury that would result if the Complaint that it drafted and chose to file is not sealed. Such generalized, conclusory assertions of "harm to KSG's reputation" (Mot. at 4) are insufficient to rebut the presumption of disclosure. Indeed, defamation cases are routinely filed in the public record, notwithstanding claims of reputational harm. *See Dombrowski*, 128 F.Supp.2d at 219 ("pleadings are filed every day with allegations that may embarrass the opposing party. If mere embarrassment were enough [to warrant sealing], countless pleadings as well as other judicial records would be kept from public view").

Second, KSG cites no authority for the proposition that materials that "touch upon, without revealing" potentially protected materials should themselves be given the same extraordinary protections as protected material themselves. Nor can it, because such a proposition sweeps far too broadly. *All* complaints, indeed all court filings, may be said to "touch upon" attorney-client privileged materials, as attorneys generally consult clients before making filings. Plaintiffs' speculative concerns regarding the *potential* disclosure of privileged or protected documents and communications are premature at best and constitute an improper basis for asking this Court to withhold court records from the public.

Finally, KSG cannot rely on the argument that sealing the Complaint is necessary to avoid "intense public scrutiny". (Mot. at 3). As a threshold matter, KSG has made no showing

why a party who has publicly supported litigation for years, acted as a spokesperson on behalf of the plaintiffs on numerous occasions, financed their efforts, and even voluntarily appeared in a documentary film about that litigation should be shielded from public scrutiny when questions of fraud and wrongdoing in that litigation arise. But more to the point, "intense public scrutiny" is not a wrong to be avoided; it is a positive good and exactly the point of the constitutional and common law right of access to court records. *See Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud").

As the Second Circuit held in a case that garnered very significant media attention, "the mere fact that the suit has been the subject of intense media coverage is not, however, sufficient to justify closure. To hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability." *ABC, Inc., et al. v. Martha Stewart, et al.*, 360 F.3d 90, 102 (2nd Cir. 2004).

### III.   CONCLUSION

For the foregoing reasons, Chevron respectfully submits that this Court should deny

Plaintiffs' Motion to Seal.


Dated: November 15, 2010                    Respectfully submitted,


                                            Arthur Makadon (Pa. I.D. No. 17104)
                                            Burt M. Rublin (Pa. I.D. No.32444)
                                            BALLARD SPAHR LLP
                                            1735 Market Street, 51st Floor
                                            Philadelphia, PA 19103-7599
                                            Telephone: 215.665.8500
                                            Facsimile: 215.864.8999

                                            OF COUNSEL:

                                            GIBSON, DUNN & CRUTCHER LLP
                                            Randy M. Mastro
                                            200 Park Avenue, 47th Floor
                                            New York, New York 10166-0193
                                            Telephone: 212.351.4000
                                            Facsimile: 212.351.4035


                                            Scott A. Edelman
                                            2029 Century Park East
                                            Los Angeles, CA 90067
                                            Telephone: 310.552.8500
                                            Facsimile: 310.551.8741

                                            Andrea E. Neuman
                                            3161 Michelson Drive
                                            Irvine, CA 92612
                                            Telephone: 949.451.3800
                                            Facsimile: 949.451.4220

                                            *Attorneys for Defendant  Chevron Corporation*

*** UNDER SEAL ***

## CERTIFICATE OF SERVICE

I, Burt M. Rublin, hereby certify that on November 15, 2010, I caused a true and correct

copy of Chevron Corporation's Opposition to Plaintiffs' Motion to Seal the Complaint and

Exhibits Thereto to be served via email on the following counsel:

James J. Rohn
Patricia M. Hamill
Matthew H. Haverstick
CONRAD O'BRIEN P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102

*Attorneys for Plaintiffs*


Bruce S. Kaplan
Robert D. Kaplan
Ellen London
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
1633 Broadway, 46th Floor
New York, NY  10019-6708

*Attorneys for Steven R. Donziger and
Donziger & Associates, P.L.L.C.*

Ilann M. Maazel
Jonathan S. Abady
Adam R. Pulver
O. Andrew F. Wilson
EMERY CELLI BRINCKERHOFF &
ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, NY  10019

*Attorneys for the Frente de Defensa Amazonia*


Burt M. Rublin